McNALLY & ASSOCIATES, L.L.C.
STEPHEN B. McNALLY, ESQ. (SM-5535)
93 Main Street, Suite 201
Newton,  New Jersey  07860
(973) 300-4260
Attorneys for Plymouth Park Tax Services LLC

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-----------------------------------------------------------x
                                                           :
In re                                                      :
                                                           :  Case No.   3:10-cv-3021-AET
PRINCETON OFFICE PARK, L.P.,                               :
                                                           :
                    Debtor.                                :
                                                           :
-----------------------------------------------------------x

---

### BRIEF OF APPELLANT PLYMOUTH PARK TAX SERVICES LLC

---

Of Counsel and on the Brief

Stephen B. McNally, Esq.

Dated:          Newton, New Jersey
                June 29, 2010

## TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF BASIS OF APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF STANDARD OF APPEAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.    ACQUISITION OF THE CERTIFICATE AND PLYMOUTH PARK'S PRE-
           PETITION ACTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     B.    THE RELIEF STAY MOTION AND JULY 15, 2009 ORDER . . . . . . . . . . . . . . 4

     C.    THE PLAN AND DISCLOSURE STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . 5

     D.    THE DEBTOR'S SUMMARY JUDGMENT MOTION . . . . . . . . . . . . . . . . . . . . 6

     E.    CONFIRMATION OF THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     F.    THE STAY PENDING APPEAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

POINT I
PLYMOUTH PARK HOLDS A TAX CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     A.    THE LACK OF A SPECIFIC ASSIGNMENT PROVISION IN
           THE NEW JERSEY TAX SALE LAW SHOULD HAVE NO BEARING .. . . . 10

     B.    NEW JERSEY LAW SPECIFICALLY PROVIDES FOR THE
           CONVEYANCE OF THE MUNICIPAL TAX LIEN INTEREST
           TO THE PURCHASER OF A TAX SALE CERTIFICATE. . . . . . . . . . . . . . . 12

     C.    THE "LIEN INTEREST OF THE MUNICIPALITY" IS NOT A
           MERE STATUTORY LIEN .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

D.     BANKRUPTCY COURT'S PREMISE THAT PAYMENT
        FOR PURCHASE OF TAX SALE CERTIFICATE EXTINGUISHES
        TAX DEBT INCONSISTENT WITH APPLICABLE LAW. . . . . . . . . . . . . . . 16

E.     PLYMOUTH PARK HOLDS A "TAX CLAIM" UNDER 11 U.S.C. § 511 .. . . 17

POINT II
RULINGS FROM OTHER DISTRICTS SUPPORT A DETERMINATION
THAT PLYMOUTH PARK HOLDS A "TAX CLAIM" UNDER SECTION 511. . . . . . . . . . 19

POINT III
THE TEXAS AD VALOREM STATUTE IS DISTINGUISHABLE
FROM THE NEW JERSEY TAX SALE LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

Archer v. Warner, 538 U.S. 314 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Brown v. Felsen, 442 U.S. 127 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Bernbaum, 404 B.R. 39 (Bankr. D.Mass.2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Brown, 951 F.2d 564 (3rd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

In re Cantwell, 336 B.R. 688 (Bankr. N.N.J. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Cortner, 400 B.R. 6008 (Bankr.S.d. Ohio 2009) . . . . . . . . . . . . . . . . 18, 19, 20, 23, 24, 25

In re Davis, 352 B.R. 651 (Bankr.N.D.Tex.2006) . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21, 23, 25

In re Flores, 2006 WL 4452973 (Bankr. D.N.J. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Glance, 487 F.3d 317 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Hamburger Distillery, 115 F.2d 84 (3d Cir. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Indian Palms Assoc. Ltd., 61 F.3d (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

In re Kizzee-Jordon, 399 B.R. 817 (Bankr. S.d. Tex 2009) . . . . . . . . . . . . . . . . . . . . . 21, 23, 24

In re Prevo, 393 B.R. 464 (Bankr. S.D. Tex 2008) . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 23, 24, 25

In re Princeton Office Park, L.P., 423 B.R. 795 (Bankr. D.N.J. 2010). . . . . . . . . . . . 9, 10, 13, 15

In re Sheffield, 390 B.R. 302 (Bankr. S.D. Tex 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 24

In re Vasquez, 2010 WL 934210 (Bankr. S.D. Tex 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Johnson v. Home State Bank, 501 U.S. 78 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16

J.P. Fyfe, Inc. v. Bradco Supply Corp., 891 F.2d 66 (3rd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . 2

SCS Credit Corp., 541 U.S.C. 465 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tax Ease Funding, LP v. Kizzee-Jordon,
2009 U.S. Dist. LEXIS 89747, 2009 WL 3186727 (S.d. Tex Sept. 28, 2009) . . . . . . 21, 22, 23, 25

Till v. SCS Credit Corp., 541 U.S.C. 465 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 20

U.S. v. Phillips, 267 F.2d 374 (5th Cir. 1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STATE CASES**

ADP of New Jersey, Inc. v. Parisppany-Troy Hills Tp., 14 N.J. Tax 372 . . . . . . . . . . . . . . . . . 11

Alpha-Bella VI, Inc. v. Clinton Tp., 14 N.J. Tax 597 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

City of Newark v. Ladato, 139 N.J. Eq. 471, 51 A.2d 895 (Ch. 1947) . . . . . . . . . . . . . . . . . . . . 13

Freehold Office Park v. Freehold Tp., 12 N.J. Tax 433 (1992) . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Gasorek v. Gruber, 126 N.J. Super. 511, 315 A.2d 706 (App. Div. 1974). . . . . . . . . . . . . . . . . 12

Newark v. Central & Lafayette Realty Co., Inc.,
150 N.J. Super. 18 (App.Div.), certif. denied.75 N.J. 528, 384 A.2d 508 (1977) . . . . . . . . 10, 11

Petak v. City of Paterson, 291 N.J. Super. 234 (App. Div. 1996) . . . . . . . . . . . . . . . . . . . . . . . 13

Savage v. Weissman, 355 N.J. Super. 429 (App. Div. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Simon v. Cronecker, 189 N.J. 3004 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Steeplechase Village, Inc. v. Twp. of Egg Harbor, 2005 WL 2435907 (Law Div. 2005) . . . . . . 11

Township of Jefferson v. Block 447A, Lot 10,
228 N.J. Super. 1, 548 A.2d 521 (App. Div. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Varsalona v. Breen Capital Services Corp., 180 N.J. 605 (2004) . . . . . . . . . . . . . . . . . . . . . . . 12

**FEDERAL STATUTES**

11 U.S.C. § 101(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 25

11 U.S.C. § 101 (12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11 U.S.C. §101(37). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11 U.S.C. § 101(53) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. § 507(a)(8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

11 U.S.C § 511. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 9, 10, 15, 17, 18, 21, 22, 23, 24, 25

11 U.S.C. § 511(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 15, 19, 25

11 U.S.C. § 523(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

11 U.S.C. § 525 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

11 U.S.C. § 1222(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

11 U.S.C. §1325(a)(5)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. §158(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## NEW JERSEY STATUTES

N.J.S.A. 54:5-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

N.J.S.A. 54:5-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10, 13, 15

N.J.S.A. 54:5-32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

N.J.S.A. 54:5-33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

N.J.S.A. 54:5-42. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13, 14, 15, 17

N.J.S.A. 54:5-46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14, 15

N.J.S.A. 54:4-67 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

N.J.S.A. 54:5-86 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**OHIO STATUTES**

ORC § 5721.30-5721.46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ORC § 5721.32(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 25

**TEXAS STATUTES**

Texas Tax Code §32.06(a-1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Texas Tax Code §32.06(a-2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Texas Tax Code §32.0659( c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**OTHER AUTHORITIES**

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Bankr. P. 8013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Norton Bankruptcy Law and Practice, Vol 3 §54:1 (3rd Ed. Jan. 2008) . . . . . . . . . . . . . . . . . . 18

## Statement of Basis of Appellate Jurisdiction

Appellant Plymouth Park Tax Services LLC ("Plymouth Park") appeals from the Order Confirming Second Amended Plan of Reorganization as Modified Herein (the "Confirmation Order") entered on May 10, 2010 by the Honorable Michael B. Kaplan, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").  The Confirmation Order incorporates the terms of the Opinion of the Bankruptcy Court docketed on February 17, 2010 (the "Opinion").  The Confirmation Order incorporating the Opinion constitutes a final order of the Bankruptcy Court.  As a consequence, this Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. §158(a)(1).

## Statement of Issues Presented

Whether the Bankruptcy Court erred in failing to recognize Plymouth Park as the holder of a "tax claim" entitled to the safe harbor from interest rate modification contained in Section 511(a) of title 11 of the United States Code (the "Bankruptcy Code"), including

(i)     declining to identify Plymouth Park as the subrogee of a "tax claim" by virtue of the purchase of a tax sale certificate under the New Jersey Tax Sale Law, N.J.S.A. 54:5-1, et seq; and

(ii)    failing to recognize that even if Plymouth Park's purchase of a tax sale certificate somehow extinguished the municipal "tax claim," Plymouth Park nonetheless acquired a tax lien under the New Jersey Tax Sale Law, N.J.S.A. 54:5-1, et seq., not merely a generic statutory lien.

–1–

**<u>Statement of Standard of Appeal</u>**

The standard of review applied by a district court when reviewing the ruling of a bankruptcy court is determined by the nature of the issue presented on appeal.  Findings of fact are not to be set aside unless they are clearly erroneous.  <u>See</u> Fed. R. Bankr. P. 8013; <u>In re Indian Palms Assoc. Ltd., 61 F.3d 1995)</u>; <u>J.P. Fyfe, Inc. v. Bradco Supply Corp.</u>, 891 F.2d 66, 69 (3d Cir. 1989).  Questions of law are subject to <u>de novo</u> plenary review.  <u>In re Brown</u>, 951 F.2d 564, 567 (3d Cir. 1991).

In this appeal, as stated in the Bankruptcy Court Opinion, there are no material issues of fact.  The legal issues presented to this Court warrant <u>de novo</u> plenary review.

## Statement of the Case

### A.      Acquisition of the Certificate and Plymouth Park's Pre-Petition Actions

Plymouth Park became a creditor of Princeton Office Park, L.P. (the "Debtor") on

December 19, 2005 when it attended a Lawrence Township, New Jersey sale of municipal tax

liens.  See Certification of Deborah Feldstein dated April 27, 2009 (the "Feldstein Certification,"

Designation of Record on Appeal ("Desig."), Item 3.   Plymouth Park bid to acquire a certificate

from Lawrence Township representing certain unpaid real property taxes and penalties due with

respect to the property identified as 4100 Quakerbridge Road, Lawrence Township, Block 4202,

Lot 1 owned by the Debtor (the "Property").

In accordance with N.J.S.A. 54:5-32, Plymouth Park acquired its tax sale certificate by

bidding a 0% interest rate for redemption and advancing on the date of the sale a premium in the

amount of $600,100.  Lawrence Township was obligated to return the premium to Plymouth Park

if the certificate was redeemed within five (5) years, after which time the premium was due to be

surrendered to Lawrence Township.  N.J.S.A. 54:5-33.

Subsequent to the date of the tax sale, and until September 8, 2008, the date of the filing

of the Debtor's petition in the bankruptcy proceeding (the "Filing Date"), Plymouth Park

periodically advanced funds to Lawrence Township to cover subsequently accruing real property

taxes and other lienable municipal charges.  Under N.J.S.A. 54:5-6, such subsequent advances

joined a "continuous lien" in favor of Plymouth Park -

> Taxes on land shall be a continuous lien on the land on which they are assessed
> and all subsequent taxes, interest, penalties, and costs of collection which
> thereafter fall due or accrue shall be added to and be a part of such initial lien

Pursuant to N.J.S.A. 54:4-67, these subsequent advances accrued interest at eighteen percent (18%), as fixed by Lawrence Township.

As permitted under N.J.S.A. 54:5-86, on December 18, 2007, Plymouth Park filed a Foreclosure Complaint seeking, <u>inter alia</u>, to bar the Debtor's equity of redemption.  Feldstein Certification, Exhibit "B."  An Order Setting Time, Place and Amount of Redemption was entered by the Superior Court on June 6, 2008 which provided that a Final Judgment could be requested on July 19, 2008.  Feldstein Certification, ¶ 5, Exhibit "C."  This deadline was extended by consent to September 10, 2008. Feldstein Certification, ¶ 6.

As acknowledged in the Debtor's Second Modified Disclosure Statement, Article III, Section B (Desig., Item 10), the "Debtor's chapter 11 filing [on the Filing Date] was precipitated by its inability to satisfy the Plymouth Park tax obligation in full by the redemption date." Disclosure Statement, p. 7.


**B.**     **The Relief Stay Motion and July 15, 2009 Order**

Faced with the jeopardy of forfeiture of the premium paid by Plymouth Park to Lawrence Township under N.J.S.A. 54:5-33 if redemption of the certificate was not made within five (5) years from the date of sale, Plymouth Park initiated a motion for relief from stay in the Bankruptcy Court on April 27, 2009 (Desig., Item 3) seeking permission to complete the tax foreclosure of the Property.

That motion was resolved by the Order Vacating Automatic Stay entered on July 15, 2009 (Desig., Item 7)(the "July 15, 2009 Order").  Somewhat misnamed, the July 15, 2009 Order does

not relieve the stay at all, but instead tolls the five year escheatment period under N.J.S.A. 54:5-33 -

> "during the period that the bankruptcy is in effect, which should be until 12/1/2014 or by further application to the court."

The July 15, 2009 Order further provides for the return by Lawrence Township of the premium paid by Plymouth Park upon redemption of the certificate pursuant to the Debtor's plan -

> [T]he Township of Lawrence shall return the $600,100 premium to Plymouth Park Tax Services, LLC that has been initially paid to the Township of Lawrence, upon receipt by the Township of Lawrence of the Plymouth tax sale certificate(s) endorsed for cancellation"

Finally, the July 15, 2009 Order required that the Proof of Claim of Plymouth Park be amended to remove the premium, which was contemplated to be refunded by Lawrence Township after the certificate was redeemed through the Plan -

> "The proof of claim held by Plymouth Park Tax Services, LLC is to be amended to remove the $600,100 premium paid to the Township of Lawrence.  Said amended proof of claim is to be paid through the Debtor's plan for complete satisfaction of its tax lien certificate(s), and upon receipt of said amount, Plymouth shall provide the Township of Lawrence with its tax sale certificate(s) showing paid in full and endorsed for cancellation."

## C.    The Plan And Disclosure Statement

On September 11, 2009, the Court entered the Order Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof (Desig., Item 11)(the "Order Approving Disclosure Statement").   The Second Modified Chapter 11 Plan (Desig., Item 9) and Second Modified Disclosure Statement (Desig., Item 10) were thereafter transmitted to creditors for voting.

The initial proposed treatment of the claim of Plymouth Park is summarized in the

Second Modified Disclosure Statement accompanying the Plan as follows:

> The Class Two Claim consists of the Secured Claim of Plymouth Park. The Class Two Creditor will have a first lien upon and security interest in the Property to the extent of this Class' Allowed Claim. The Debtor will execute a standard Note and Mortgage in favor of Plymouth Park, which provides for (i) interest at the Interest Rate from and after the Effective Date; (ii) quarterly principal and interest payments starting on the first day of the third month succeeding the Effective Date with a balloon on the last (20th) payment, and (iii) amortization over 25 years. USLR will execute a guarantee relating to this Note. This Class is impaired.

Importantly, the "Interest Rate" is defined in Article I, Section 1.2.17 of the Second Modified

Chapter 11 Plan as follows:

1.2.17  "Interest Rate" shall mean 6% fixed or such other rate as determined by the Court.

Plymouth Park submitted a ballot rejecting the Second Amended Chapter 11 Plan, objecting to

the six percent (6%) interest rate which the Debtor proposed to pay, as well as to the provision

for the conversion of Plymouth Park's municipal tax lien into a mortgage obligation.

**D.**     **The Debtor's Summary Judgment Motion**

The Bankruptcy Court instructed the Debtor to present the issues raised by Plymouth Park

in the form of a summary judgment motion, which the Debtor filed initially on August 18, 2009

(Desig., Item 8), followed on October 29, 2009 by a Memorandum of Law in Support of Partial

Summary Judgment (Desig., Item 12) and a final Letter Brief on January 6, 2010 (Desig., Item

14).  The responses of Plymouth Park were filed as a Response to Motion on November 29, 2009

(Desig., Item 13), and a final Response  to Motion filed on January 28, 2010 Desig., Item 15).

On February 17, 2010, the Bankruptcy Court below issued its Opinion (Desig., Item 16),

which granted, in part, the Debtor's summary judgment motion.

**E.**   **Confirmation of the Plan**

In light of the Opinion, as well as limited negotiations between the parties, the Debtor proposed certain revisions to the Second Modified Chapter 11 Plan, which revisions are summarized in the Certification of Lawrence Berger in Support of Confirmation of Second Amended Plan filed on May 7, 2010 (Desig., Item 18)(the "Berger Cert.").  The Court thereafter entered an Order Confirming Second Amended Plan of Reorganization as Modified Herein on May 10, 2010 (Desig., Item 19)(the "Confirmation Order").  The Confirmation Order recited the modifications to the Second Modified Chapter 11 Plan adopted by the Bankruptcy Court, and further incorporated the determinations set forth by the Bankruptcy Court in the Opinion.

**F.**   **The Stay Pending Appeal**

On May 10, 2010, at the request of Plymouth Park, the Bankruptcy Court granted an Order Staying Confirmation Order Pending Appeal (the "Stay Pending Appeal").

## LEGAL ARGUMENT

## POINT I

## PLYMOUTH PARK HOLDS A TAX CLAIM

The central issue of this appeal is the determination of the character of the claim of Plymouth Park.  Plymouth Park contends that it is the holder of a "tax claim" entitled to the safe harbor from interest rate modification contained in Section 511 of title 11 of the United States Code (the "Bankruptcy Code").  The Bankruptcy Court below disagreed, holding that Plymouth Park is not itself the municipality, and is not the specific subrogee or assignee of the tax claim under the New Jersey statutory scheme, and thus it is not a "tax claimant." As such, the Bankruptcy Court has held that the Debtor is entitled to adjust the interest rate to be paid on the Plymouth Park claim.

Section 511 of the Bankruptcy Code, enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, provides that the rate of interest on "tax claims" shall be determined under applicable non-bankruptcy law -

> (a) If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

> (b) In the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed.

11 U.S.C. § 511, by its express terms, applies to: (i) the payment of interest on a tax claim or administrative expense tax; or (ii) the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim.  11 U.S.C. § 511(a).

The effect of 11 U.S.C. § 511 is to insulate holders of "tax claims" from having their interest rates reduced under the "cram down" analysis applicable to other loans pursuant to <u>Till v. SCS Credit Corp.</u>, 541 U.S.C. 465 (2004).[1]

In the Opinion below, the Bankruptcy Court determined that Plymouth Park was not the holder of a "tax claim" entitled to the protection of the safe harbor from interest rate modification contained in Section 511.   <u>In re Princeton Office Park, L.P.</u>, 423 B.R. 795 (Bankr. D.N.J. 2010).

Noting that Section 511 contained no definition of a "tax claim," the Bankruptcy Court turned to the New Jersey Tax Sale Law, N.J.S.A. 54:5-1, <u>et seq.</u>, to discern whether an investor holding a tax sale certificate issued by a New Jersey municipality is a tax claimant under Section 511.  <u>Princeton Office</u> at 799-800.

Searching the New Jersey Tax Sale Law, the Bankruptcy Court found no explicit assignment or subrogation to the municipal tax claim as part of the tax sale certificate transaction.  <u>Princeton Office</u> at 801.  The Bankruptcy Court then observed that Plymouth Park is not itself a municipality, and that as a result of the purchase of the tax sale certificate the municipality received payment in full of the outstanding tax obligation.  <u>Princeton Office</u> at 801. This led the Bankruptcy Court to conclude that the purchase of a tax sale certificate extinguished the municipal tax liability.

---

[1] <u>Till</u> addresses the appropriate cram down rate in Chapter 13 cases under11 U.S.C. 1325(a)(5)(B)(ii).  <u>Till</u> has been held to be applicable in Chapter 11 cases under a parallel cram down provision.  <u>In re Cantwell</u>, 336 B.R. 688, 691-693 (Bankr. D.N.J. 2006); <u>In re Flores</u>, 2006 WL 4452973 (Bankr. D.N.J. 2006). Section 1129(b)(2)(A)(i)(II) requires as a condition of cramdown that the holder of a secured claim receive "deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holders interest in such property."

> In the case at bar, Plymouth Park does not possess an allowed claim for taxes, as it is undisputed that the underlying taxes owing to the Township have been paid and that Plymouth Park is not empowered to assess or collect taxes.

Princeton Office at 801.  In the absence of an outstanding municipal tax debt, the Court

concluded that Plymouth Park was not the holder of a "tax claim."

This decision of the Bankruptcy Court misapprehends the operation of the New Jersey

Tax Sale Law, contradicts the intentions of the drafters of Section 511 of the Bankruptcy Code,

and should be rejected by this Court.

### A.   The Lack of a Specific Assignment Provision in the New Jersey Tax Sale Law Should Have No Bearing

In searching for a specific provision of the New Jersey Tax Sale Law that provides for the

assignment or subrogation of the municipal tax obligation to the purchaser of a tax sale

certificate, and then attaching significance to the absence of such a provision, the Bankruptcy

Court establishes a false premise.   This inquiry overlooks that a real property tax obligation is in

rem only, and is specifically not a personal liability of a property owner.  There is no bifurcation

of the in rem and in personam commitments in the New Jersey Tax Sale Law as the Bankruptcy

Court supposes.  There is only the lien.  The significance attached to the lack of an explicit

assignment or subrogation of the presumed in personam liability is therefore misplaced.

Under N.J.S.A. 54:5-6, real property taxes form a "continuous lien" against the assessed

property -

> Taxes on land shall be a continuous lien on the land on which they are assessed and all subsequent taxes, interest, penalties, and costs of collection which thereafter fall due or accrue shall be added to and be a part of such initial lien

Real property taxes are a lien against the real estate, not a personal obligation of the landowner.

Newark v. Central & Lafayette Realty Co., Inc., 150 N.J.Super. 18, 21(App.Div.), certif. denied,

75 N.J. 528, 384 A.2d 508 (1977); <u>Alpha-Bella VI, Inc. v. Clinton Tp.</u>, 14 N.J. Tax 597 (1995);

<u>Freehold Office Park v. Freehold Tp.</u>, 12 N.J.Tax 433, 440-41 (1992).

> A municipality [or the holder of a tax sale certificate] may recover delinquent real property taxes only through action against the property itself pursuant to the "Tax Sale Law" (R.S. 54:5-1 et seq.) and the supplementary "In Rem Tax Foreclosure Act" (P.L.1948, c. 46; (C.54:5-104.29 et seq.). <u>Property taxes are not debts; thus, they may not be enforced through civil action against property owners.</u>

<u>Steeplechase Village, Inc. v. Twp. of Egg Harbor</u>, 2005 WL 2435907 (Law Div. 2005)(emphasis

added); <u>see</u> <u>also</u> <u>ADP of New Jersey, Inc. v. Parsippany-Troy Hills Tp.</u>, 14 N.J. Tax 372

(1994)("Property taxes are not a personal obligation of the owner but are a lien on the property.")

The absence of an explicit assignment or assumption of the municipal tax obligation in

the New Jersey Tax Sale Law upon the sale of a tax sale certificate should not lead to conclusion

drawn by the Bankruptcy Court that the municipal tax debt is extinguished.  There is, in fact, no

municipal tax liability that is differentiatable from the municipal tax lien.  A municipal tax

obligation is a non-recourse, <u>in rem</u> obligation from the date of assessment and remains an <u>in rem</u>

obligation after transfer to a purchaser of a tax sale certificate.

Focused upon the absence of an assignment or subrogation of the supposed debt, the

Bankruptcy Court overlooks the explicit transfer of the lien.  That <u>in rem</u> obligation, in the form

of the lien for municipal taxes, is specifically transferred to a purchaser of a tax sale certificate

under the New Jersey Tax Sale Law.  <u>See</u> N.J.S.A. 54:5-42 (discussed below). Given the

existence of a specific conveyance in the New Jersey Tax Sale Law of the lien of the municipal

taxes, and understanding that a municipal tax is an <u>in rem</u> obligation only, this Court should

reject the significance attached in the Opinion to the absence of an independent provision for an

assignment or subrogation of a municipal tax debt.

**B.      New Jersey Law Specifically Provides for the Conveyance of the Municipal
Tax Lien Interest to the Purchaser of a Tax Sale Certificate**

The New Jersey Tax Sale Law is explicitly clear in providing for the passage of the

municipal tax lien to the purchaser of a tax sale certificate.  Under N.J.S.A. 54:5-42, the tax sale

certificate purchaser also receives a lien simultaneously with the title:

> When a sale is made in the enforcement of a **municipal lien, the lien shall pass,
> with the title, to the purchaser** ...

[emphasis added].  Under N.J.S.A. 54:5-46, the purchaser receives the tax sale certificate

evidencing the receipt of the conveyance of the municipal lien:

> The officer ... shall deliver to the purchaser a certificate of sale under his hand and
> seal, acknowledged by him as a conveyance of land, which shall set forth therein
> that the property therein described was sold by him to the purchaser, setting up the
> date of sale, the amount paid by the purchaser, the description of the land, the
> name of the owner and the items of the several municipal liens or charges, interest
> and costs, all contained in the list, the rate of redemption for which sold, the date
> to which liens are included, and the time when the right to redeem will expire. ...

The mechanics of the New Jersey Tax Sale Law are structured so that the initial tax sale

is an outright sale of the property, subject to a right of redemption reserved in the fee owner and

any other interest holders in the property. Simon v. Cronecker, 189 N.J. 304, 318 (2007).  This

sale with redemption rights is not interpreted by the New Jersey courts to be an absolute sale of

the property at all.  Instead, New Jersey courts hold that the certificate vests the purchaser with an

"inchoate right or interest and gives the purchaser the right to foreclose the equity of redemption

pursuant to the statutory scheme." Varsalona v. Breen Capital Services Corp., 180 N.J. 605, 618

(2004), citing Gasorek v. Gruber, 126 N.J.Super. 511, 515, 315 A.2d 706 (App.Div.1974).

Most importantly, "[t]he sale itself does not divest the property owner of the land; rather, the purchaser of the certificate **succeeds to the lien interest of the municipality**." Savage v. Weissman, 355 N.J. Super. 429, 436 (App. Div. 2002)(emphasis added); Petak v. City of Paterson, 291 N.J.Super 234, 244(App. Div. 1996); Township of Jefferson v. Block 447A, Lot 10, 228 N.J.Super. 1, 4, 548 A.2d 521 (App.Div.1988); City of Newark v. Ladato, 139 N.J. Eq. 471, 474, 51 A.2d 895 (Ch. 1947); see, also, Freehold Office Park, Ltd. v. Twp. of Freehold, 12 N.J.Tax 433, 438 (1992)("the lien for the unpaid taxes has been assigned to the purchaser of the tax sale certificate").

In propounding that no municipal tax debt survives the purchase of a tax sale certificate, the Bankruptcy Court fails to credit the significance of the explicit lien conveyance accomplished by the operation of N.J.S.A. 54:5-42 and 54:5-46.

## C.   The "Lien Interest of the Municipality" is Not a Mere Statutory Lien

The Bankruptcy Court nonetheless recognizes the survival of a lien interest in the creation of a tax sale certificate. Princeton Office at 801. It demotes this lien interest, however, to that of a mere statutory lien.[2] Princeton Office at 801. The express purpose of this transposition should be recognized by this Court as a construction by which the Bankruptcy Court circumvents statutory continuity of the municipal tax lien in accordance with N.J.S.A. 54:5-6, and the transfer

---

[2] 11 U.S.C. § 101(53) defines "statutory lien" as:

[L]ien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

of the lien interest of the municipality to the holder of a certificate accomplished under N.J.S.A. 54:5-42 and 54:5-46.

This substitution of a statutory lien for the municipal tax lien arose, in large part, as the product of the discussion of <u>Johnson v. Home State Bank</u>, 501 U.S. 78 (1991).  While the Bankruptcy Code does not specifically define the term "tax claim,"  the term "claim" is defined in 11 U.S.C. § 101(5), and  "claim" was interpreted by the United  States Supreme Court in <u>Johnson</u> to include liens.

In <u>Johnson</u>, a debtor who had received a discharge in a prior chapter 7 case attempted to restructure his mortgage in a subsequent chapter 13 case.  The mortgage holder argued  that the debtor did not hold a "claim" within the meaning of 11 U.S.C. § 101(5) in the chapter 13 case because the debtor had received a discharge of his <u>in personam</u> liability in the previous chapter 7 case.  The <u>Johnson</u> Supreme Court disagreed, holding that even <u>in rem</u> rights, such as non-recourse liens, constitute "claims" under the Bankruptcy Code. <u>Johnson</u>, 501  U.S. at 84.  See also <u>In re Glance</u>, 487 F.3d 317, 320-21 (6th Cir. 2007).

The holding of <u>Johnson</u> challenges the Bankruptcy Court's attachment of relevance to the <u>in personam</u>/<u>in rem</u> character to the debt represented by Plymouth Park's tax sale certificate. This is because the Supreme Court in <u>Johnson</u> did not hold that the mortgagee's claim derived from the continuing existence of the debt, but rather, from the mortgagee's continuing <u>in rem</u> rights against the debtor's property, even after extinguishment of the debtor's personal liability. Stated another way, the <u>Johnson</u> Court held that it was the mortgagee's lien itself which constituted a claim, not the relationship between the lien and the debt. <u>Johnson</u>, 501 U.S. at

84-86. This reasoning amounts to a syllogism: because "liens" are "claims" under Johnson, then

"tax liens" are "tax claims" under Section 511.

In the Opinion below, the Bankruptcy Court recognized and agreed with the application

of Johnson to a point, stating that

> In this regard, the Court agrees with Plymouth Park that the term "tax claim" must
> include "tax lien."

Princeton Office, 423 B.R. at 801.  The Bankruptcy Court continued, however, contriving to

distinguish the municipal tax lien transferred pursuant to N.J.S.A. 54:5-42 as a mere statutory

lien -

> This begs the question, however, as to whether the "lien" that Plymouth Park
> acquired as a result of the purchase of the tax sale certificate qualifies as a "tax
> lien."

In re Princeton Office Park, L.P., 423 B.R. at 801.  The Bankruptcy Court returns, here, to its

initial and fallacious distinction, reiterating that the municipal tax liability has an independent in

personam vitality that is somehow extinguished in the tax sale.

> Stated differently, because the taxes have already been paid to the Township, is
> the lien that Plymouth Park holds a "tax lien," and therefore a "tax claim" under
> the Code, or is it simply another statutory lien that would fall outside the scope of
> § 511(a).

Respectfully, to the extent that this premise presumes a debt independent of the municipal lien it

is simply contrary to the plain reading of the New Jersey Tax Sale Law. The only obligation of

any kind that exists under New Jersey Tax Sale Law is the in rem municipal tax lien.  As

opposed to being extinguished, that municipal tax lien explicitly survives and is a continuous lien

on the land pursuant to N.J.S.A. 54:5-6 and is transferred to the purchaser of a tax sale certificate

by the operation of N.J.S.A. 54:5-42 and N.J.S.A. 54:5-46.  Returning to the impact of Johnson,

-15-

and the syllogism resulting therefrom, if the lien conveyed to Plymouth Park is a municipal tax lien, and a lien is a claim under <u>Johnson</u>, then Plymouth Park is the holder of a "tax claim" under Section 511.

      **D.**        **Bankruptcy Court's Premise that Payment for Purchase of Tax Sale Certificate Extinguishes Tax Debt Inconsistent with Applicable Law**

The Bankruptcy Code makes a distinction between claims and liens: a "claim" being a "right to payment," 11 U.S.C. §101(5), and a "lien" being a "charge against or interest in property to secure payment of a debt or performance of an obligation," 11 U.S.C. §101(37). The Bankruptcy Code also defines "debt" as a "liability on a claim." 11 U.S.C. §101(12). These provisions tie with <u>Johnson</u> in that an <u>in rem</u> (or non-recourse) obligation is still a "debt" and a "claim" secured by a "lien."

Even absent an <u>in personam</u> characteristic, to have a lien one must have a debt. The debt is the monetization or the liquidation of a claim. All three (lien/debt/claim) are required for there to be a secured claim of any sort. If there is no liability (debt), there is no claim. If there is no liability (debt), there is no lien.

The Court's analysis of the New Jersey Tax Sale Law, concluding extinguishment of the underlying tax claim, contradicts the generally accepted principal that a lien or mortgage is merely an incident to the debt which it is intended to secure, that the payment of the debt extinguishes the lien or mortgage, and that an assignment of a lien or mortgage without assignment of the debt is considered to be without meaning or use.

If the payment of the Debtor's tax debt by Plymouth Park upon purchase of the tax sale certificate extinguished the underlying tax claim, then the municipal tax lien would be

extinguished as well.  See generally, In re Hamburger Distillery, 115 F.2d 84, 85 (3d Cir. 1940)("[it] is inherent in the concept of the lien- the right to retain possession of the property of another until the debt or duty it secures is paid or discharged."); see also U.S. v. Phillips, 267 F.2d 374, 377 (5th Cir. 1959) ("A lien is a charge upon property for the payment or discharge of a debt.  It is therefore dependent upon the existence, the amount of, and provability of the debt.  If the debt has been paid or otherwise expunged, […] the lien is extinguished.")**.**

The better reasoned analysis, which gives effect to the entire scheme of New Jersey tax sales, and is consistent with both New Jersey common law and applicable bankruptcy jurisprudence, is that the payment which is required under New Jersey Tax Sale Law upon purchase of a tax sale certificate and the payment of any subsequently accruing taxes, is the means by which the tax claim —the debt as well as the tax lien— are acquired.  When this is considered in concert with the express subrogation and entitlement of Plymouth Park to almost all the rights and remedies of the taxing authority (as pointed out by the Bankruptcy Court, there are some exclusions), the statutory transfer provisions encompass the in toto transfer of the tax claim -- the "debt" and the "lien."  There can be no other conclusion than that both the debt and the lien are acquired when, upon the sale of a tax sale certificate, the "municipal lien, the lien shall pass, with the title, to the purchaser ..."  N.J.S.A. 54:5-42.

### E.        **Plymouth Park Holds a "Tax Claim" Under 11 U.S.C. 511**

Section 511 was explicitly drafted to protect all creditors holding tax claims, not just governmental entities, from interest rate modifications -

–17–

> "The plain meaning of § 511 is unambiguous: the bankruptcy court must refer to state law and may no longer use its equitable powers to alter the interest rate on the tax claim, from the rate set forth under the applicable state law."

In re: Bernbaum, 404 B.R. 39, 42-43 (Bankr. D.Mass. 2009).  Section 511 is not limited to

governmental units holding tax claims, but instead referenced creditors generically -

> § 511, unlike other sections of the Code, is not limited to governmental units, but instead uses the broad term "creditor." In re Davis, 352 B.R. 651, 654 (Bankr.N.D.Tex.2006). See also Norton Bankruptcy Law and Practice, Vol. 3, § 54:1 (3rd Ed. Jan. 2008). Had Congress intended this provision only apply to governmental units holding such claims, it could have easily referred to "governmental units" instead of "creditor"

In re Cortner, 400 B.R. 608, 613 (Bankr. S.D. Ohio 2009)("Congress appears to have little

difficulty limiting sections of the Bankruptcy Code to government units. See, e.g., § 507(a)(8), ...

§ 525, ... § 1222(a)(2)(A), ...").   In re Davis, 352 B.R. at 654, observed that the drafters of 11

U.S.C. § 511 did not endeavor to define "tax claim," but they did include in its express terms

language "to enable a **creditor** to receive the present value of … a tax claim" -- implicit

recognition that "tax claims" might be held by private entities rather than just governmental units

The Davis Court stated:

> It is clear that if [a third party transferee] had not paid [the] Debtors' property taxes and the taxing authority had filed a proof of claim for the delinquent taxes in [the] Debtors' Bankruptcy Case, the rate of interest on its claim would be determined under applicable nonbankruptcy law under section 511.  The claim should be subject to section 511 in the hands of [a third party transferee], the taxing authority's successor-in-interest.

Davis, 352 B.R. at 655 ("[C]ourts have determined that assignees and subrogees have the same

rights to which their predecessors-in-interest would be entitled had no transfer taken place.")

(citations omitted).

In characterizing a claim, Federal courts will often look to the substance of the claim rather than the label placed on it by the parties.  For example, in <u>Archer v. Warner</u>, 538 U.S. 314, 319-320 (2003), the United States Supreme Court held that fraud debts memorialized into consent judgments which do not reference the fraudulent conduct could, nevertheless, be found to constitute non-dischargeable "fraud" debts pursuant to 11 U.S.C. § 523(a)(2). (citing <u>Brown v. Felsen</u>, 442 U.S. 127, 138-139 (1979) (holding that bankruptcy court should look behind parties' agreement to determine the true nature of a claim)).  A similar analysis should apply to this case. Notwithstanding the fact that the tax sale certificate represents a right to payment held by a party other than a taxing authority, this Court may look behind the debt to determine the debt's true nature.  It is undisputed that the tax sale certificate represents a tax debt, and as such, the tax sale certificate should qualify as a "tax claim."

<u>**POINT II**</u>.

**RULINGS FROM OTHER DISTRICTS SUPPORT A DETERMINATION
<u>THAT PLYMOUTH PARK HOLDS A "TAX CLAIM" UNDER SECTION 511</u>**

The issue of whether a private lienholder holds a tax claim for purposes of § 511(a) is a matter of first impression in this jurisdiction.  With that being said, cases outside of the Third Circuit support the conclusion that the holder of a tax sale certificate issued under New Jersey's Tax Sale Law holds a tax claim for purposes of § 511(a).

In  <u>In re Cortner</u>, <u>supra</u>, 400 B.R. at 613, the Bankruptcy Court of the Southern District of Ohio held that the prepetition purchaser of a tax certificate for a Chapter 13 debtor's delinquent real property taxes on his residence was the holder of a "tax claim," pursuant to Ohio state law

procedure that provided for transfer of tax debt itself and not just the taxing authority's lien, so as to be entitled to payment of interest at the certificate rate of 18% as required under Ohio law, and not at the <u>Till v. SCS Credit Corp.</u> "prime plus" rate calculated by the debtor.

Under Ohio law, "[u]pon issuing a tax certificate, the delinquent taxes that make up the certificate purchase price are transferred, and the superior lien of the state and its taxing districts for those delinquent taxes is conveyed intact to the certificate holder." <u>ORC</u> § 5721.32(E).  "The result of the Ohio tax certificate statutory scheme [<u>ORC</u> §§ 5721.30- 5721.46]", in the words of the <u>In re Cortner</u> court, "is that the certificate holder becomes the party with standing to collect those taxes or initiate foreclosure proceedings, pursuant to its first lien position." <u>Id.</u> at 614  The <u>In re Cortner</u> court reasoned that the "holder of a tax certificate does not pay a county treasurer for the taxes and in turn hold a completely new debt with a lien against the real estate." <u>Id.</u> at 612.  "Rather," the court further reasoned, "under Ohio law, from the language chosen by the Ohio legislature . . . the delinquent taxes are transferred and, therefore, the Creditor's claim is a tax claim." <u>Id.</u>

<u>In re Prevo</u>, 393 B.R. 464 (Bankr. S.D. Tex. 2008), relied upon by the Debtor before the Bankruptcy Court, holds that under the particular Texas state statute governing the sale of an ad valorem tax lien to an investor, the investor acquires a tax lien only, differentiating the hypothecation of the lien under the statute from that of the claim.  Observing that under the statute the purchaser of the lien pays the taxes and receives a new promissory note from the property owner, the <u>Prevo</u> court found that the purchaser was not the holder a tax claim as a consequence of that transaction, <u>id</u> at 470-471.

-20-

In re Davis, supra, 352 B.R. at 654, is a Texas Bankruptcy Court opinion contradicting In re Prevo, indicating a division within the State concerning the application of Section 511 to the Texas statute.  Likewise In re Sheffield, 390 B.R. 302 (Bankr. S.D. Tex. 2008) and In re Kizzee-Jordan, 399 B.R. 817 (Bankr. S.D. Tex 2009) are two additional Southern District of Texas Bankruptcy Court opinions (both authored by the Honorable Marvin Isgur) that concurred with In re Prevo, creating a triumvirate of opinions originating in the Southern District of Texas supporting the Debtor's reading of Section 511, at least as overlaid on the Texas ad valorem tax scheme.

In Tax Ease Funding, LP v. Kizzee-Jordan, 2009 U.S. Dist. LEXIS 89747, 2009 WL 3186727 (S.D. Tex. Sept. 28, 2009), unpublished, the District Court for the Southern District of Texas reversed In re Kizzee-Jordan, holding that the bankruptcy court erred in confirming a plan under Chapter 13 that lowered the interest rate on a tax lien held by a private lienholder.

In so ruling, the Tax Ease District court also implicitly overruled earlier holdings of bankruptcy courts in the Southern District of Texas to the contrary, i.e., In re Prevo and In re Sheffield.  The Tax Ease District Court adopted the approach by the Bankruptcy Court in In re Davis, supra, 352 B.R. at 654 finding persuasive that:

> [C]ourts should focus on the nature of the underlying debt. Not the identity of the holder of the claim, in determining a party's rights with respect to a claim.

Under Texas law, "A person may authorize another person to pay the taxes imposed by a taxing unit on the person's real property by filing with the collector for the unit" a document giving such authorization, and a "tax lien may be transferred to the person who pays the taxes on behalf of the property owner". Texas Tax Code § 32.06(a-1),(a-2).  "When someone pays the real-property taxes of another, he is subrogated to the rights of the taxing unit." Tax Ease, supra,

at *1 (citing Texas Tax Code §32.0659(c)).  In other words, when a private entity pays the property taxes for another, he "in return t[akes] the government's secured and protected place." Id.  The Tax Ease District Court held that the transfer of the claim to the private entity did not change the nature of the claim, entitling the private entity to the protection against the lowering of interest rates set forth in §511 of the Bankruptcy Code. Id.

After the Tax Ease District Court issued its opinion, the Bankruptcy Court in the Southern District of Texas followed the Tax Ease District Court's holding.  See In re Vasquez, 2010 WL 934210 (Bankr. S.D. Tex. 2010), unpublished.  In In re Vasquez, the court held that under Texas law the identity of the current holder of a tax lien does not affect the nature of the underlying debt, and that under § 511 transferees qualify for tax claim treatment if their assignors would also qualify. Id. at *1. Therefore, the court held that the private entity that obtained an assignment of the tax lien from a governmental entity held a tax claim under § 511. Id.

Here, looking to the New Jersey Tax Sale Law and the claim of the private lienholder, as more fully set forth above, the private lienholder purchaser of a tax sale certificate obtains the municipal lien from the municipality.  The underlying tax debt is not satisfied. To the contrary, the private lienholder succeeds to the lien interest of the municipality and is entitled to the same rights that a municipality it could itself exercise, with only certain narrow constraints.  It logically follows that the private lienholder would be entitled to the interest rate reduction protection of §511 as the municipality would have been if it had not conveyed the lien to the private lienholder by virtue of the tax sale.

Tax Ease is now on further appeal to the Fifth Circuit Court of Appeals and as of the writing hereof no decision has been rendered.  Plymouth Park recognizes that the District Court

reversal of In re Kizzee Jordan is not dispositive on the issue of the whether a tax investor under Texas law is a "tax claimant" under Section 511, but only further indication of division within that State, and further that even a Fifth Circuit determination would not be dispositive but at best persuasive upon this Court.  But since the entire body of law interpreting "tax claimant" under Section 511 is nascent, Plymouth Park does offer that the reversal of In re Kizzee Jordan and the addition of In re Vasquez is further evidence of the minority status of the Prevo and Sheffield opinions.

Plymouth Park therefore urges the Court to reject any analogy of Texas law as analyzed in Prevo and Sheffield to New Jersey law, and instead adopt the reasoning of the District Court of the Southern District of Texas in the Tax Ease, as well as In re Davis, In re Vasquez, and In re Cortner, 400 B.R. 608, 613-615 (Bankr. S.D. Ohio 2009).

## POINT III

### THE TEXAS AD VALOREM STATUTE IS DISTINGUISHABLE FROM THE NEW JERSEY TAX SALE LAW

New Jersey law materially differs from Texas law as it relates to the sale of liens for unpaid real property taxes. The Kizzee-Jordan opinion is particularly instructive in this regard, even though reversed by Tax Ease, in that it highlights a critical distinction between Texas law and that of the other states analyzed, including New Jersey.  According to Kizzee-Jordan, not only does Texas law not provide for the transfer of the tax claim, but it specifically provides for the extinguishment of the underlying debt and the creation of a new in personam obligation.  In re Kizzee-Jordan at 820.  Under Texas law, an owner of real property that is delinquent on ad valorem taxes must execute a new promissory note under this statute in order to induce an

-23-

investor to pay the tax claim on the owner's behalf.   In re Kizzee-Jordan at 820.  This newly

created obligation is no longer just an in rem obligation, but becomes a personal obligation of the

fee owner.  This newly created direct obligation to the investor is then secured by the transfer of

the state's lien under the terms of the statute.   In re Kizzee-Jordan at 820. As stated by the court -

> Here, RETax has extinguished the underlying debt. RETax did not purchase the
> taxing unit's claim. RETax paid the claim. RETax's claim arises from the
> promissory note executed by the Sheffields. RETax's claim does not arise from the
> rights of a third-party that RETax purchased. The Court agrees that under many
> code provisions, including § 511, courts must examine the underlying nature of a
> debt rather than the face of the current holder of the debt. The identity of the claim
> holder is irrelevant to the Court's holding. The Court should focus on the
> underlying debt. Here, the tax claim has been paid. The underlying debt is the
> promissory note executed by the Sheffields.

In re Kizzee-Jordan at 820.

Neither the laws of any of the other states analyzed in Cortner, Prevo, Sheffield and

Kizzee-Jordan, nor the laws of New Jersey, so provide for the creation of a new in personam

obligation in the form of a promissory note newly executed by the fee holder as a predicate for

the sale of the tax lien.

In re Cortner, 400 B.R. at 612-613 carefully analyzes Ohio law in distinguishing Prevo

and concludes that even though the Ohio statute refers often to lien conveyance, as in New

Jersey, under the scheme for the sale of tax sale certificates in Ohio, more than just the lien is

conveyed upon the sale of the certificate, thus entitling the holder of a certificate to the status of a

tax claimant:

> It is true that the Ohio tax certificate statutes reference the transfer of the lien on
> the real property to the tax certificate purchaser. However, under Ohio law, the
> holder of tax certificates does not pay a county treasurer for the taxes and in turn
> holds a completely new debt with a lien against the real estate. Rather, under Ohio
> law, from the language chosen by the Ohio legislature in creating the procedures
> for the sale of tax certificates, the delinquent taxes are transferred and, therefore,

-24-

the Creditor's claim is a tax claim. The last sentence of ORC § 5721.32(E) refers to both a transfer of the taxes and the "superior lien of the state" to the certificate holder. Thus, the "claim" of the Creditor-as defined by §101(5)-represents delinquent taxes purchased under Ohio law by the certificate holder and, therefore, must be paid according to Ohio law. 11 U.S.C. § 511.

Plymouth Park submits that New Jersey law is similar to the laws of Ohio (Cortner), and Kentucky and Pennsylvania (analyzed in Prevo,) and distinguishable from Texas, in that the payment of the tax claim by the investor is not accompanied by the execution of a note evidencing an entirely new in personam obligation of the fee holder in favor of the investor.  The underlying liability remains the tax liability, and under In re Cortner, In re Davis, and Tax Ease, the Court should look to the character of the underlying liability when determining tax claimant status.

## CONCLUSION

For the reasons set forth above, the Plymouth Park respectfully requests that the Court enter an order (i) reversing the Opinion; (ii) determining that Plymouth Park is the holder of a "tax claim" under 11 U.S.C. §511(a); and (iii) granting such other and further relief as the Court deems just and proper.

Dated: Newton, New Jersey
      June 29, 2010                      Respectfully submitted,

                                     MCNALLY & ASSOCIATES, L.L.C.
                                     93 Main Street
                                     Newton, New Jersey 07860
                                     (973) 300-4260
                                     Attorneys for Plymouth Park Tax Services LLC

                           By:   /s/ Stephen B. McNally             
                              STEPHEN B. MCNALLY, ESQ.  (SM-5335)