Keith A. Bonchi, Esquire *(KAB3664)*
**GOLDENBERG, MACKLER, SAYEGH & MINTZ,**
**PFEFFER, BONCHI & GILL, P.C.**
660 New Road, Suit 1-A
Northfield, NJ 08225
(609) 646-0222
Attorneys for New Jersey League of Municipalities,
Tax Collectors and Treasurers Association of New Jersey,
Township of Lawrence, and Northeast Regional Tax Collectors and
Treasurers Association (46908-30)

---

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| IN RE: | : | **UNITED STATES DISTRICT COURT** |
| | : | **CIVIL ACTION** |
| | : | **NO. 3:10-cv-3021-AET** |
| | : | |
| | : | CHAPTER 11 |
| | : | CASE NO.  08-27149 |
| **PRINCETON OFFICE PARK, L.P.** | : | |
| | : | |
| *Debtor* | : | **ON APPEAL FROM:** |
| | : | UNITED STATES BANKRUPTCY |
| | : | COURT, DISTRICT OF NEW JERSEY |
| | : | |
| | : | **SAT BELOW:** |
| | : | HON.MICHAEL B.KAPLAN,U.S.B.J. |

---

**AMICUS BRIEF IN SUPPORT OF REVERSAL OF BANKRUPTCY COURT'S
DECISION BY NEW JERSEY LEAGUE OF MUNICIPALITIES, TAX
COLLECTORS AND TREASURERS ASSOCIATION OF NEW JERSEY,
TOWNSHIP OF LAWRENCE, AND NORTHEAST REGIONAL TAX
COLLECTORS AND TREASURERS ASSOCIATION**

---

**Keith A. Bonchi, Esquire**
      **Of Counsel and on the Brief**


**Rosann Allen, Esquire**
      **Attorney on the Brief**

**TABLE OF CONTENTS**

TABLE OF CONTENTS......................................................i

TABLE OF AUTHORITIES.................................................ii

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY.................1

LEGAL ARGUMENT........................................................3

    I.    UNDER 11 U.S.C. § 511(a) THE RATE OF INTEREST ON TAX CLAIMS IS DETERMINED BY THE APPLICABLE NONBANKRUPTCY LAW REGARDLESS OF WHETHER THE CREDITOR IS OR IS NOT A GOVERNMENTAL UNIT .......................................3

    II.   THE BANKRUPTCY COURT ERRED IN HOLDING THAT PLYMOUTH PARK COULD NOT HOLD A TAX LIEN UNDER NEW JERSEY STATE LAW .................................................................5

    III.  PLYMOUTH HOLDS A TAX LIEN UNDER NEW JERSEY LAW ........................................................7

CONCLUSION............................................................13

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

In re Bernbaum, 404 B.R. 39 (Bankr. D.Mass. 2009)...............4

In re Cortner, 400 B.R. 608 (Bankr. S.D. Ohio 2009).............4

In re Davis, 352 B.R. 651 (Bankr. N.D. Texas 2006).............5

In re Princeton Office Park, L.P., 423 B.R. 795
     (Bankr. D.N.J. 2010)...................................7,12

**STATE CASES**

Bron v. Weintraub, 42 N.J. 87 (1964)............................5

Byram Holding Co. v. Bogren, 2 N.J. Super. 331
     (Ch. Div. 1949).........................................11

Casino Reinvestment Development Authority v. Cohen, 321 N.J.
Super. 297 (L.Div. 1998).......................................11

City of Newark v. Ladato, 139 N.J. Eq. 471 (Ch. 1947)..........13

Millburn Tp. v. Block 1208, Lot 2, 189 N.J. Super. 523 (Ch.
1983)..........................................................8

North Bergen Tp. Hudson County v. Usher, 142 N.J.Eq. 479 (Ch.
1948).........................................................10

S&R Associates v. Lynn Realty, 338 N.J. Super. 350, 360 (App.
Div. 2001).....................................................8

Savage v. Weissman, 355 N.J. Super. 429 (App. Div. 2002).......11

**FEDERAL STATUTES**

11 U.S.C.A. § 511................................3,4,5,6,7,14,15

**NEW JERSEY STATUTES**

N.J.S.A. 54:5-1..............................................8,9

N.J.S.A. 54:5-3................................................5

N.J.S.A. 54:5-6.............................................8,12

N.J.S.A. 54:5-9..........................................8,10,12

N.J.S.A. 54:5-11...............................................9

N.J.S.A. 54:5-12...............................................9

N.J.S.A. 54:5-19.............................................6,8

N.J.S.A. 54:5-30...............................................9

N.J.S.A. 54:5-32..............................................13

N.J.S.A. 54:5-46.............................................8,9

N.J.S.A. 54:5-50..............................................10

N.J.S.A. 54:5-54..............................................11

N.J.S.A. 54:5-58..............................................10

N.J.S.A. 54:5-86..............................................10


**FEDERAL LEGISLATIVE HISTORY**

Committee on the Judiciary, H.R. Rep. No. 109-31(2005)..........4

**STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY**

The New Jersey State League of Municipalities (hereinafter "League") is comprised of most of the officials of every municipality in the State of New Jersey together with their many officers and chief financial officers. The purpose of the League is to receive and review legislation given to them for the purpose of approving, supporting or opposing the particular pieces of legislation being proposed. It is part of the function of the League to appear before many of the committees of the legislature and to appear with their presentation, pro or con, as to the various pieces of legislation. The League has always worked in conjunction with the various committees of the legislature to the end that the interests of local municipalities and their citizens are protected. The position of the League is well respected by all branches of the legislature.

The Tax Collectors and Treasurers Association of New Jersey (hereinafter "TCTA")is a combination of all of the municipal tax collectors, chief financial officers, treasurers and other officers who play a most important role with regard to the securing of necessary revenue which is mainly derived from municipal taxes, and other liens. It is the duty of the tax collector to make sure that all property owners receive their tax bills in a timely fashion, to notify the taxpayers in the

1

event of their failure to pay monies due and if need be to conduct public sales on the various municipal liens. Under the egis of Rutgers University, the TCTA conducts seminars and tests for those who desire to become tax collectors. An applicant who fails to pass the test given by Rutgers University cannot take the state examination. It is also the function of the TCTA to work closely with the Division of Local Government Services and, when requested, to provide various seminars not less than two times a year to assist those tax collectors to obtain the necessary credits which they require in order to continue with the certification process and obtain the proper certification. It is the duty of the TCTA to teach each and every tax collector their function and duties throughout the State to the end that they can properly function according to law. The TCTA has been in existence for over forty years.

The Township of Lawrence (hereinafter "Township") is the municipality where the subject property is located. The Township through its tax collector is the entity that sold the subject tax sale certificate to Appellant/Creditor Plymouth Park Tax Services, LLC. The Township through its tax collector is the one that calculates the amount to redeem.

The Northeast Regional Tax Collectors and Treasurers Association (hereinafter "NRTCTA") is a professional association comprised of local government tax collection officials from the United States & Canada. Established in 1989, the NRTCTA's

mission is to become an important resource to the over 10,000 local government tax collecting jurisdictions in the northeast region of North America. NRTCTA member states are New Jersey, Connecticut, New York, Delaware, Pennsylvania, Rhode Island, Maine, Vermont, Maryland, Massachusetts, and New Hampshire, along with Washington, D.C. In fact, almost 50% of the total number of tax collecting jurisdictions in the country are located in the northeast region from Maryland to Maine. The NRTCTA supports the interaction and education of local tax collection and related officials within this important segment of the public service sector.

It is the position of amicus that any Court decision which undermines the effective collection of tax revenue is of concern to said entities. It is the position of amicus that the decision of Judge Kaplan is contrary to existing state law and the plain wording of 11 U.S.C. § 511(a). As such, it is the further position of amicus that the Bankruptcy Court's decision must be reversed.

## LEGAL ARGUMENT

### I
**UNDER 11 U.S.C. § 511(a) THE RATE OF INTEREST ON TAX CLAIMS IS DETERMINED BY THE APPLICABLE NONBANKRUPTCY LAW REGARDLESS OF WHETHER THE CREDITOR IS OR IS NOT A GOVERNMENTAL UNIT**

Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter "the Act"):

> There was no uniform rate of interest applicable to tax claims. As a result, varying standards have been

used to determine the applicable rate.  Section 704 of the **Act amends the Bankruptcy Code to add section 511 for the purpose of simplifying the interest rate calculation**. In provides for all tax claims (federal, state, and local), including administrative expense taxes, the interest rate shall be determined in accordance with applicable nonbankruptcy law " Committee on the Judiciary, H.R. Rep. No. 109-31 page 101 (2005). [Emphasis added.]

To these ends, 11 U.S.C. § 511(a), "Rate of interest on tax claims" of the Act provides:

If any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

"The **plain meaning of § 511 is unambiguous**: the **bankruptcy court must refer to state law** and **may no longer use its equitable powers to alter the interest the on tax claim**, from the rate set forth under the applicable state law." In re Bernbaum, 404 B.R. 39, 42-43 (Bankr. D.Mass. 2009). [Emphasis added.]

Furthermore, "§ 511, unlike other sections of the Code, is not limited to governmental units, but instead used the broad term 'creditor'. . . Had Congress intended this provision only apply to governmental units holding such claim, it could have easily referred to "governmental units" instead of 'creditor'." In re Cortner, 400 B.R. 608, 613 (Bankr. S.D. Ohio 2009).  "Had Congress wanted to limit section 511's applicability to claims in the hands of governmental units it could have easily done so,

4

but it chose not to." In re Davis, 352 B.R. 651, 654 (Bankr. N.D. Texas 2006).

Simply put, § 511 protects private holders of tax claims in addition to governmental holders of tax claims from having their interest rates lowered. Therefore, it logically follows that under the plain wording of § 511(a) the rate of interest on tax claims is determined by the applicable nonbankruptcy law regardless of whether the creditor is or is not a governmental unit.

## II
**THE BANKRUPTCY COURT ERRED IN HOLDING THAT PLYMOUTH PARK COULD NOT HOLD A TAX LIEN UNDER NEW JERSEY STATE LAW**

It is the position of amicus that the Bankruptcy Court misapplied state law. Prior to reviewing the statutory law in New Jersey, it is important to review the public policy. N.J.S.A. 54:5-3 sets forth how a court is to construe the Tax Sale Law. This section states:

> This chapter shall be deemed to be a remedial statute and to operate both prospectively and retrospectively, and be liberally construed to effectuate the remedial objects thereof.

The New Jersey Supreme Court has clearly stated that "[c]ontrary to early hostility to such titles, the policy today is to support them, thereby to aid municipalities in raising revenue." Bron v. Weintraub, 42 N.J. 87, 91 (1964).

The purpose of the Tax Sale Law is to allow municipalities to raise revenue and enrich the municipal treasury. The trial court has essentially ruled that if a municipality sells a tax

5

sale certificate to a third party, it is no longer a tax lien under Section 511 of the Bankruptcy Code, and therefore, the Bankruptcy Court has the authority to reduce statutory interest. It is important to understand the net effect of this decision.

In New Jersey, municipalities are required each year to conduct a sale for unpaid taxes. N.J.S.A. 54:5-19 requires that a tax collector sell liens for delinquent taxes. N.J.S.A. 54:4-67 provides that the delinquency rate is 18% for unpaid taxes. At the tax sale, bidding starts at 18% and it is a reverse auction. The statutory return of interest is a key incentive that brings investors such as Plymouth to the tax sale.

At a public tax sale, most municipalities sell all of their liens with the exception of liens that have no market value. The liens that are not purchased by investors usually are contaminated property, undersized lots or lots in rural areas or urban areas that have little or no market value. Essentially, the Bankruptcy Court has ruled that only those undesirable properties on which no third party investor will purchase a tax lien are entitled to statutory interest.  Hence, the municipalities will never collect this interest, since no one will ever redeem these liens. These liens are normally foreclosed by the municipality in an *in rem* proceeding.

Accordingly, the Bankruptcy Court has held that section 511 only protects municipally held tax liens even though same will never receive statutory interest. Only in rare exceptions will

6

these municipal liens be redeemed. The net effect of the lower court decision is to render section 511 meaningless in New Jersey.

It is important to note that large companies such as Plymouth borrow money at market rate to invest at New Jersey tax sales. If the Bankruptcy Court can reduce Plymouth's return to market rate, it will lose money. Companies such as Plymouth have administrative expenses and if it cannot make a profit, they simply will not invest in liens in New Jersey. Therefore, in interpreting the Tax Sale Law, it is to be liberally construed to achieve the object of raising revenue for municipalities.

### III
### PLYMOUTH HOLDS A TAX LIEN UNDER NEW JERSEY LAW

In its opinion, the Bankruptcy Court has ruled that Plymouth does not hold a tax lien, and therefore, is not entitled to the protections of Section 511 of the United States Bankruptcy Code. In its opinion, the trial court ruled that Plymouth's claim against the Debtor has never been for taxes, but rather only for the "redemption price owed as a result of Plymouth Park having paid the Debtor's tax obligation" to the municipality. 423 B.R. at 805. It is respectfully submitted that the Bankruptcy Court is in error.

First, the definition of "delinquency" is set forth in N.J.S.A. 54:4-67. Delinquency is defined as "the sum of all taxes and municipal charges due on a given parcel of property covering any number of quarters or years. The property shall

7

remain delinquent, as defined herein, until such time as all unpaid taxes, including subsequent taxes and liens, together with interest thereon shall have been fully paid and satisfied. **The delinquency shall remain notwithstanding the issuance of a certificate of sale pursuant to R.S. 54:5-32 and R.S. 54:5-46…."**[1]

A review of the tax sale law indicates that at N.J.S.A. 54:5-6, the Legislature has indicated that "[t]axes on lands shall be a continuous lien on the land on which they are assessed…" The law has long held that delinquent real property taxes and interest thereon are a single tax debt for each year. See Millburn Tp. v. Block 1208, Lot 2, 189 N.J. Super. 523 (Ch. 1983). Under New Jersey law a "lien arises against real estate in which taxes are assessed in the event of non-payment." S&R Associates v. Lynn Realty, 338 N.J. Super. 350, 360 (App. Div. 2001). A tax lien, whether owned by the municipality or a third party investor is governed by the Tax Sale Law as codified within N.J.S.A. 54:5-1 et. seq.  The most important provision of the Tax Sale Law, N.J.S.A. 54:5-9 indicates that every municipal lien shall be a first lien on such land and paramount to any other lien, except a subsequent municipal lien. This applies whether it is held by the municipality or by a third party investor.

---

[1] The New Jersey Tax Court has ruled in Ramos v. Passiac City, 19 N.J. Tax 97 (Tax 2000) that a distressed property owner can still file a tax appeal notwithstanding the failure to pay taxes. This case has never withstood Appellate review, and amicus simply points same out to the court.

8

N.J.S.A. 54:5-19 governs what is referred to in the tax sale in New Jersey. Simply stated, a tax collector is required to perform a tax sale each year. However, the tax sale is not only open to third party investors, but is also open to the municipality. N.J.S.A. 54:5-30.1 expressly provides that a municipality may authorize by resolution a municipal officer to bid against outside investors for the right to buy a lien. Therefore, municipalities can acquire municipal liens by two methods. First, they can outright bid against other individuals. If no one is willing to purchase a lien because the property is undesirable, then it reverts back.

Whether the municipality or an outside third party investor such as Plymouth is purchasing the tax lien, the municipality issues what is referred to as a certificate for unpaid municipal liens to a bidder such as Plymouth or also to the municipality. See N.J.S.A. 54:5-46. Therefore, contrary to what is indicated by the lower court, Plymouth received a Certificate for Unpaid Municipal Liens, commonly referred to as a tax sale certificate.

Furthermore, if one were to request from the tax collector of Lawrence Township an Official Search for municipal liens under N.J.S.A. 54:5-11, notwithstanding the fact that Plymouth has purchased the municipal lien in this case, the tax collector would issue a search indicating that there are still outstanding taxes due and owing on this property and there is a lien on the property. See N.J.S.A. 54:5-12. Contrary to what is stated by

the learned Bankruptcy Court, the municipality would show the taxes as being open and unpaid on this property and indicate there is a tax lien outstanding. As set forth in the definition of "delinquency", the municipality would show that the taxes are still delinquent notwithstanding the fact that a tax sale certificate was issued.

Furthermore, N.J.S.A. 54:5-50 allows the tax sale certificate to be recorded and indexed as a mortgage. This is true whether the certificate is held by the municipality or a third party investor such as Plymouth. Again, no distinction is made under New Jersey law. Furthermore, the tax collector still controls the redemption process. If a distressed property owner fails to pay subsequent taxes when due, an entity such as Plymouth can pay subsequent taxes by delivering said money to the tax collector who will record same. Furthermore, the amount to redeem is also calculated by the tax collector pursuant to N.J.S.A. 54:5-58. The redemption process is governed by the tax collector. Furthermore, the tax collector will show the lien being paid and will correct the municipal records to show that unpaid taxes no longer exist on the property.

It is important to note that under New Jersey law, N.J.S.A. 54:5-9 makes New Jersey's lien for unpaid taxes a super priority lien. This key provision to the Tax Sale Law overrides the old equitable principle of first in right, first in time. Municipal tax liens take precedence in the inverse order of the time in

which they became liens. See North Bergen Tp. Hudson County v. Usher, 142 N.J.Eq. 479 (Ch. 1948).

As properly set forth by the Bankruptcy Court Judge, the owner of a municipal tax lien under N.J.S.A. 54:5-86 has a right to foreclose said lien after two years. Under N.J.S.A. 54:5-54, the owner has a right to redeem prior to the entry of Final Judgment. Therefore, if Plymouth was filing a foreclosure action, it would be referred to under the New Jersey Court Rules as a tax sale foreclosure. Plymouth was not foreclosing a claim to payment. Rather, the unpaid taxes are treated as a lien on real property, not as a personal liability of the owner. See Casino Reinvestment Development Authority v. Cohen, 321 N.J. Super. 297 (L.Div. 1998). "A tax sale certificate is not an outright conveyance. It creates…a lien on the premises and conveys the lien interest of the taxing authority." Savage v. Weissman, 355 N.J. Super. 429, 436 (App. Div. 2002). **A purchaser of a tax sale certificate from a municipality is entitled to the same rights 'as a municipality could exercise' "including the right to foreclose."** Byram Holding Co. v. Bogren, 2 N.J. Super. 331, 334 (Ch. Div. 1949).

Therefore, it is respectfully submitted that the Bankruptcy Court erred when it stated that Plymouth did not own a tax lien. New Jersey Courts and the Legislature have clearly indicated that Plymouth owns a tax lien. Plymouth even has a certificate issued by Lawrence Township indicating that it was a certificate

11

for unpaid municipal liens. That certificate is recorded with the County Clerk to tell the whole world that Plymouth owns a municipal tax lien.

Therefore, one must again review the Bankruptcy Court's decision. The Bankruptcy Court indicated that the Debtor was not paying taxes when there was a redemption but rather paying a sum "representing the amount Plymouth Park paid the Township for the Debtor's unpaid taxes, plus interest and various fees." 423 B.R. at 805. This is simply incorrect. The municipal tax collector controls this entire process. She is named the tax collector because she does exactly that, collect taxes. The taxes that were delinquent in this case became a lien under N.J.S.A. 54:5-6 and 54:5-9. A lien for these unpaid taxes was sold to Plymouth at the tax sale. The Debtor is in fact paying taxes through a Bankruptcy Plan in accordance with the Tax Sale Law at statutory interest. Furthermore, when Plymouth purchased the tax sale certificate, it did not satisfy the "Debtor's outstanding tax obligation to the Township, in full." 423 B.R. at 805. The official search will indicate that the tax collector will show those taxes as still open in the form of a lien. If those taxes are not paid by the Debtor, with the permission of the Bankruptcy Court, Plymouth would be able to foreclose the real estate for unpaid taxes after two years has passed.

The learned Bankruptcy Court Judge concedes that had Lawrence Township assigned or subrogated its rights to Plymouth

12

Park, "the Court would follow the approaches taken in the Texas and Ohio cases." 423 B.R. at 805.  Again, when Plymouth went to a public tax sale and bid against other investors for the tax sale certificate on the subject property, it did in fact stand in the shoes of the municipality in acquiring the rights to foreclose the municipal lien. The municipality issued a tax sale certificate to Plymouth and Plymouth has all the rights set forth in the Tax Sale Law.

N.J.S.A. 54:5-32 indicates that the purchaser at a tax sale purchases fee subject to redemption. Contrary to what is stated by the Bankruptcy Judge in his opinion, "a tax sale certificate is a conveyance of the land, subject to redemption." City of Newark v. Ladato, 139 N.J.Eq. 471, 474 (Ch. 1947). **"It is also an assignment of the tax lien."** Id. **"When a municipality sells a tax sale certificate, it transfers title to the land and to the lien; and such transfer of title is the substance of the transaction."** Id.

## CONCLUSION

For the above stated reasons, it is the position of amicus that the Bankruptcy Court decision is contrary to the express language of the Tax Sale Law and also public policy. Municipalities throughout the State of New Jersey rely upon tax sales that are conducted at least one time per year to raise money for unpaid taxes. Investors come to the State of New

13

Jersey mostly for the interest rate that is given on tax sale certificates. It is a rare exception that a lienholder is able to foreclose real estate that is worth significantly more than the redemption sum. Rather, almost all tax sale foreclosures result in redemptions. The intent of Congress when it enacted Section 511 to the United States Bankruptcy Code was to take away from the Bankruptcy Court the authority to reduce statutory interest. The reason that Congress enacted this legislation was at the request of municipalities throughout the country who wanted to protect their ability to raise revenue by collecting statutory interest.

    The net effect of the lower court decision will be to stop the stream of revenue into municipalities, thereby creating larger tax delinquencies. Aggressive bidding at tax sales occurs because of statutory interest. Here, the amount that Plymouth received on the initial certificate was zero because it bid down and actually paid a premium for the simple right to buy that certificate.

    Hence, the distressed property owner will pay no interest on the initial purchase amount of the tax sale certificate and will only pay statutory interest at 18% on the subsequent taxes. The net effect of Judge Kaplan's decision will be to chill investors which will mean that distressed property owners will be paying 18% because either there will be limited bidding at tax sales in the future or Lawrence Township will end up owning

the lien since no one will want to purchase the lien and subject themselves to the risk of having the interest reduced. Investors do not come to New Jersey to lose money. Hence, the integrity of the Tax Sale Law must be upheld and enforced.

    For all of the above stated reasons, it is respectfully requested that this court reverse the Bankruptcy Court's decision in this matter and clearly state that Section 511 of the Bankruptcy Code applies to tax liens in the State of New Jersey.

                                    _/s/ Keith A. Bonchi_____
                                    KEITH A. BONCHI, ESQUIRE

                                    _/s/ Rosann Allen_____
                                    ROSANN ALLEN, ESQUIRE

Date:  June __30__, 2010