NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                                        :
In re                                            :          Civil No. 10-3021 (AET)
                                                        :
PRINCETON OFFICE PARK, L.P.        :          **OPINION & ORDER**
                                                        :
_____:

THOMPSON, J.

      This matter has come before the Court upon Plymouth Park Tax Services LLC's

("Plymouth Park") Appeal from the United States Bankruptcy Court for the District of New

Jersey's ("Bankruptcy Court") Order Confirming Second Amended Plan of Reorganization as

Modified Herein ("Order").  The Court has decided the Appeal upon consideration of the

submissions of the parties, without oral argument, pursuant to Fed. R. Civ. P. 78(b).  For the

reasons set forth below, the Order of the Bankruptcy Court is affirmed.

JURISDICTION & STANDARD OF REVIEW

      The Court has jurisdiction to hear appeals from final judgments, orders, decrees and, with

leave of the court, from interlocutory orders and decrees entered by the Bankruptcy Court.  28

U.S.C. § 158(a).  The Court reviews "the Bankruptcy Court's findings of fact for clear error and

exercise[s] plenary review over the Bankruptcy Court's legal determinations." *In re Handel*, 570

F.3d 140, 141 (3d Cir. 2009).

BACKGROUND

      Debtor Princeton Office Park, L.P. ("Debtor") is the owner of real property located at

4100 Quakerbridge Road, Lawrence Township, Mercer County, New Jersey (the "Property").

1

As of December 2005, Debtor owed unpaid taxes on the Property of $204,396.79. On December 19, 2005, the Tax Collector of Lawrence Township, conducted a public auction pursuant to New Jersey's Tax Sale Law ("Tax Sale Law"), N.J.S.A. 54:5-1 et. seq., at which Princeton Park bid on and acquired a tax sale certificate for the Property. In exchange for the tax sale certificate, Plymouth Park paid Lawrence Township the amount of the unpaid taxes plus a premium of $600,100.[1] Plymouth Park paid to Lawrence Township the amount of all subsequently accrued taxes on the Property up until the filing of the Debtor's bankruptcy petition. Under New Jersey law, these subsequent amounts were added into the amount required for redemption of the tax sale certificate and accrued interest at a rate of 18%, as fixed by the municipality. N.J.S.A. §§ 54:5-6; 54:4-67.

On December 18, 2007, Plymouth Park filed a foreclosure complaint seeking to bar Debtor's right to redemption of the certificate.[2] The date on which a final judgment in the foreclose action could be requested was set by consent for September 10, 2008. On September 9, 2008, Debtor filed a Chapter 11 bankruptcy petition. In October 2008, Plymouth Park submitted a proof of claim in the bankruptcy proceeding for the amount paid for the tax sale certificate, subsequent taxes paid to the municipality, penalties, and accrued post-petition interest

---

[1]Under the Tax Sale Law, at an auction for tax sale certificates, bidders bid based on the amount of interest which they are willing to accept on the certificate. N.J.S.A. § 54:5-32. The winning bid is that with the lowest proposed interest rate. *Id.* If the interest rate is bid down to zero percent, bidders may then bid premiums that they are willing to pay in excess of the unpaid taxes. *Id.* Any premium is held by the tax collector and returned to the tax sale certificate purchaser if the certificate is redeemed within five years. N.J.S.A.§ 54:5-33. If the certificate is not redeemed within five years the premium is retained by the municipality. *Id.*

[2]The purchaser of a tax sale certificate is entitled to move to a debtor's right of redemption any time after the expiration of two years from the date of the sale of the tax sale certificate. N.J.S.A.§ 54:5-86.

at a rate of 18%.[3]

On June 10, 2009, Debtor filed its Plan of Reorganization (the "Plan").  The Plan proposed that Debtor would execute a Note and Mortgage in favor of Plymouth Park and provided for interest at a rate of 6% beginning on the Plan's Effective Date.  Plymouth Park objected to several elements of the Debtor's disclosure statement and Plan, including Debtor's proposed adjustment of the interest rate from 18% to 6%.  Following the instructions of the Bankruptcy Court, Debtor filed a summary judgment motion to resolve these disputes.

On February 17, 2010, the Bankruptcy Court issued an opinion in which it granted in part Debtor's motion for summary judgment, finding that the interest rate could be adjusted downwards because Plymouth Park's claim was not a tax claim and therefore was not entitled to the protection of 11 U.S.C. § 511.  The Bankruptcy Court thereafter entered the Order confirming Debtor's Second Amended Plan of Reorganization as Modified on May 10, 2010, which reflected the Bankruptcy Court's summary judgment opinion.

Plymouth Park filed its Appeal of the Bankruptcy Court's Order on June 15, 2010. Execution of the Order was stayed pending the Appeal. The National Tax Lien Association, Inc., as well as the New Jersey League of Municipalities, Tax Collectors and Treasurers Association of New Jersey, Township of Lawrence, and the Northeast Regional Tax Collectors and Treasurers Association have filed amicus briefs in support of Plymouth Park's Appeal.

<u>ANALYSIS</u>

The sole issue raised on appeal is whether the Bankruptcy Court erred in holding that

---

[3]The original proof of claim was for the amount of  $1,775,791.33.  The Bankruptcy Court subsequently ordered this amount reduced to remove the amount of the premium paid to Lawrence Township and later accepted Debtor's proposed post-petition interest rate of 6%.

Plymouth Park's claim was not a tax claim entitled to protection from interest rate modification under § 511 of title 11 of the Bankruptcy Code.  Because the only issue raised upon appeal is a pure question of law, the Court will review the issue de novo.

**1.      Section 511 of the Bankruptcy Code**

When confirming a plan of reorganization, a bankruptcy court may "cram down" the contractual or statutory interest rate of a creditor's claim when equity so requires.  11 U.S.C. § 1129.  However, in 2005, Congress enacted § 511 of the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act.  Section 511 provides that the rate of interest on a "tax claim" shall be "the rate determined under applicable nonbankruptcy law." 11 U.S.C. § 511.  This provision of the Bankruptcy Code thereby protects holders of "tax claims" from having their applicable interest rates crammed down by a bankruptcy court.

It is undisputed that Plymouth Park, as holder of a tax sale certificate, holds a lien against the Property.  N.J.S.A. § 54:5-42; *Varsolona v. Breen Capital Services Corp.*, 180 N.J. 605, 618 (2004).  It is also undisputed that, as a holder of a lien, Plymouth Park has a "claim" under the Bankruptcy Code.  *Johnson v. Home State Bank*, 501 U.S. 78 (1991).  What is in dispute, and is the subject of this Appeal, is whether that claim is a "tax claim" for the purposes of § 511 or is some other form of claim subject to cram down.

The Bankruptcy Code does not provide a definition of a "tax claim."[4]  The Court therefore must turn to state law, and in particular the Tax Sale Law, to determine how to properly characterize Plymouth Park's claim.  *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15,

---

[4]The Bankruptcy Code defines a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation," while a claim is a "right to payment."  11 U.S.C. § 101(5 & 37).

20 (2000).

## 2.      New Jersey's Tax Sale Law

The Tax Sale Law was designed to give municipalities a means by which to collect tax revenues while shifting the burden of tax foreclosure from the municipalities to private individuals.  *Sonderman v. Remington Const. Co., Inc.*, 127 N.J. 96, 109 (1992); *Caput Mortuum, L.L.C. v. S & S Crown Servs., Ltd.*, 366 N.J. Super. 323, 335 (App. Div. 2004); *Crusader Servicing Corp. v. City of Wildwood*, 345 N.J. Super. 456, 462 (L. Div. 2001).  In New Jersey, unpaid taxes form a "lien on the land on which they are assessed . . . ."  N.J.S.A. § 54:5-6.  The Tax Sale Law allows tax collectors to sell, at public auction, "each parcel of real property . . . upon which the municipal liens remain unpaid . . . ."  N.J.S.A. § 54:5-31.  When the sale is made, the municipality's lien interest passes to the purchaser of the tax sale certificate. N.J.S.A. § 54:5-42.

Although the Tax Sale Law appears to call for the sale of the property, New Jersey courts have consistently interpreted the law as vesting the purchaser of a tax sale certificate with an inchoate lien interest rather than providing for the actual conveyance of the property.  *Varsolona*, 180 N.J. at 618; *Savage v. Weissman*, 355 N.J. Super. 429, 436 (App. Div. 2002).  Thus, the purchaser of a tax sale certificate has: "the right to receive the sum paid for the certificate with interest at the redemption rate for which the property was sold; the right to redeem from the holder a subsequently issued tax sale certificate; and the right to acquire title by foreclosing the equity of redemption of all outstanding interests, including that of the property owner." *Varsalona*, 180 N.J. at 617 (citing *Jefferson Twp. v. Block 447A, Lot 10*, 228 N.J. Super. 1, 4-5 (App. Div. 1988).  It is noteworthy that, according to the New Jersey courts which have

5

interpreted this state law, the right to collect a set amount of unpaid taxes is *not* among the rights held by the purchaser of a tax sale certificate.

Indeed, the purchaser of a tax sale certificate pays the amount of unpaid taxes to the municipality in exchange for the tax sale certificate, thereby satisfying that tax debt.  *See* N.J.S.A. § 54:5-25 (notice of sale lists property by amount of unpaid taxes due); N.J.S.A. § 54:5-31 (property shall be sold for amount advertised); N.J.S.A. § 54:5-32 (setting out auction process in which municipality receives amount of unpaid taxes or amount of unpaid taxes plus premium). In New Jersey, unpaid taxes are a lien against the property rather than a personal obligation of the property owner and thus can be paid by anyone.  *Ramos v. Passaic City*, 19 N.J. Tax 97, 105 (Tax Ct. 2000).  New Jersey courts have consistently treated the tax obligation as being resolved when payment for a tax sale certificate is received.  *U.S. Land Resources v. Borough of Roseland*; 24 N.J. Tax 484, 492 (Tax Ct. 2009) ("municipality has chosen to make itself whole by a tax sale, and the payment received constitutes the full payment of the taxes"); *I.E.'s, L.L.C. v. Simmons*, 392 N.J. Super. 520, 528 (L. Div. 2006) ("In exchange for the tax sale certificate, the municipality receives the amount of the taxes owed plus interest and costs of the sale."); *Ramos*, 19 N.J. Tax at 112-13 ("it is the sale of the certificate, not the redemption of the certificate, which results in payment to the municipality of the delinquent taxes"); *Echelon Glen Co-op., Inc. v. Voorhees Twp.*, 275 N.J. Super. 441, 450 (App. Div. 1994) (municipality received tax revenues at time of sale of certificate for tax appeal purposes); *Freehold Office Park, Ltd. v. Freehold Twp.*, 12 N.J. Tax 433, 441 (Tax Ct. 1992) (same).

The fact that the amount of unpaid taxes is paid by the purchaser of the tax sale certificate would suggest that the debt connected to the lien interest acquired by the purchaser is

no longer a claim for unpaid taxes, but is rather a statutory obligation arising out of the Tax Sale Law. This conclusion is supported by the language of the Tax Sale Law. Specifically, the Tax Sale Law states that the amount required for redemption of a tax sale certificate "shall be the sum paid at the sale" plus expenses incurred by the purchaser and subsequent municipal liens.[5] N.J.S.A. § 54:5-58. The Tax Sale Law does *not* define the amount of redemption in terms of unpaid or delinquent taxes.

Plymouth Park challenges the idea that the taxes have in fact been paid, citing to N.J.S.A. § 54:4-67. In considering that subsection of the Tax Sale Law, a little historical background is appropriate. In *Freehold Office Park*, the New Jersey Tax Court held that taxes were considered to have been paid when a municipality received the proceeds from sale of a tax sale certificate for the purposes of determining if the property owner could bring a tax appeal.[6] 12 N.J. Tax at 440-41. In response, the New Jersey Legislature amended § 54:4-67 to address the issue of delinquency after sale of a tax sale certificate. According to the amended statute, "[a] property shall remain delinquent, as defined herein, until such time as all unpaid taxes, including subsequent taxes and liens, together with interest thereon shall have been fully paid and satisfied. The delinquency shall remain notwithstanding the issuance of a certificate of sale pursuant to R.S. 54:5-32 and R.S. 54:5-46." N.J.S.A. § 54:4-67. However, in *Ramos*, the New Jersey Tax Court held that this provision of the amended statute violated the requirements of procedural due process and continued to treat the taxes as paid at the time that the proceeds from the tax sale

---

[5]Expenses and subsequent municipal liens are only included in the amount required for redemption if the tax certificate is not redeemed within ten days of the sale. N.J.S.A. § 54:5-58.

[6]In New Jersey, a tax appeal may not be brought until the taxes have been paid.

certificate were received.  *Ramos*, 19 N.J. Tax at 104.  Courts discussing issues regarding tax

sale certificates since *Ramos* have acted in accord with that opinion.  *See, e.g.*, *U.S. Land*

*Resources*, 24 N.J. Tax at  492; *Simmons*, 392 N.J. Super. at 528.  The Court is thus persuaded

that the taxes owed by Debtor should be considered to have been paid by Plymouth Park at the

time it purchased the tax sale certificate despite the legislature's amendment of § 54:4-67.

Plymouth Park argues that the Court should look at the substance of the claim and the

debt's true nature to determine whether holding the tax sale certificate gives it a "tax claim."

The Court agrees.  However, this analysis leads it to a different conclusion than that suggested

by Plymouth Park.  The tax debt to the municipality having already been resolved, the true

nature of the debt is no longer that of unpaid taxes.  Rather, Plymouth Park holds a lien securing

the Debtor's obligation to pay the redemption amount.  Thus, the lien interest which is the source

of Plymouth Park's claim should not be treated as a "tax claim" under § 511 of the Bankruptcy

Code.[7]

The Court's conclusion that Plymouth Park does not hold a tax claim does not rest solely

on the state courts' characterization of the lien interest associated with a tax sale certificate or the

fact that the taxes due have already been paid.  The Court also finds it noteworthy that, as

discussed in detail by the Judge Kaplan in his summary judgment opinion, the lien associated

with a tax sale certificate has a number of characteristics which differ from those of the lien held

by the municipality for unpaid taxes.  A tax sale certificate must be recorded in the county

---

[7]The Court agrees with Plymouth Park that a "tax claim" need not necessarily be held by
a municipality or government entity.  *See* 11 U.S.C. § 511 (referring to "creditor" rather than a
governmental entity); *In re Davis*, 352 B.R. 651, 654 (Bankr. N.D. Tex. 2006.).  However,
simply holding a municipal lien does not mean that one holds a tax claim under either state law
or the Bankruptcy Code.

mortgage records in order to maintain priority over subsequent bona fida purchasers, lessees or mortgagees. N.J.S.A. 54:5-50; N.J.S.A. 54:5-51. There is no such recording requirement for a municipality's tax liens. In addition, after a tax sale certificate is sold, subsequent property taxes are assessed against the property owner and may form a separate lien against the property if unpaid. N.J.S.A. § 54:5-39. This contrasts with the situation where the municipality holds the lien, in which case subsequent taxes, interest, penalties and costs of collection are automatically added to and become part of the initial lien.[8] N.J.S.A. § 54:5-6. These differences support the Court's conclusion that the holder of a tax sale certificate does not have a "tax claim" under New Jersey law.

**3.      Results in Other Jurisdictions**

This issue is one of first impression in the District of New Jersey, and thus it would not be unusual for the Court to look to other jurisdictions which have resolved this problem for guidance. Debtor and Plymouth Park have relied on holdings from the Southern District of Texas and the Southern District of Ohio in their briefs. The bankruptcy court in the state of Ohio has found that the holder of a tax certificate does in fact have a "tax claim" for the purposes of § 511. *In re Cortner*, 400 B.R. 608, 613-15 (Bankr. S.D. Ohio 2009). The bankruptcy courts in the state of Texas are divided, although a district court in Texas recently held that the holder of a similar instrument did have a "tax claim." *Cf. In re Prevo*, 393 B.R. 464, 471 (Bankr. S.D. Tex. 2008); *In re Sheffield*, 390 B.R. 302, 303 (Bankr. S.D. Tex. 2008); *with Tax Ease Funding, LP v.*

---

[8]The holder of a tax sale certificate is given the right to redeem any subsequent tax sale certificate in order to protect their priority standing. However, this right need not be exercised and is clearly distinguishable from having subsequent taxes and penalties automatically added on to an existing tax sale certificate.

*Kizzee-Jordan*, Civ. No. H-09-333, 2009 WL 3186727, 1 (S.D. Tex. Sep. 28, 2009); *In re Vasquez*, No. 09-20565, 2010 WL 934210, *1-2 (Bankr. S.D. Tex. Mar. 10, 2010); *In re Davis*, 352 B.R. 651, 655 (Bankr. N.D. Tex. 2006.).  However, the determination is one which turns on the intricacies of the relevant state law, and thus the opinion of a court sitting in another state and applying another state's law is not particularly instructive.  The Court is not convinced that the law of either Ohio or Texas is similar to that of New Jersey and therefore sees no need to adopt the reasoning of any of the above-cited courts.[9]  It finds much more persuasive the detailed and thoughtful analysis of Chief Bankruptcy Judge Wizmur and Bankruptcy Judge Kaplan, both of whom gave careful consideration to the law of New Jersey before coming to the conclusion that, in this state, the purchaser of a tax sale certificate does not hold a "tax claim."  *In re Burch*, No. 10-11360, 2010 WL 2889520 (Bankr. D.N.J. Jul. 15, 2010); *In re Princeton Office Park, L.P.*, 423 B.R. 795 (Bankr. D.N.J. 2010).

**4.      Relevant Policy Concerns**

Plymouth Park and the amici have raised the concern that allowing bankruptcy judges to modify the interest rates on tax sale certificates in bankruptcy proceedings may have the effect of reducing demand for the certificates, thereby making it more difficult for local government entities to collect needed tax revenues.  Although the Court recognizes the legitimacy of this

---

[9]In Ohio, when a private party purchases a tax certificate, "the delinquent taxes that make up the certificate purchase price" are transferred to the purchaser along with the government's lien interest in the property.  Ohio R.C. § 5721.32.  Thus, the Ohio statute makes clear that the amount owed to the holder of a tax certificate includes delinquent taxes.  The Texas statute also appears to be structured quite differently from the Tax Sale Law, as it makes no mention of any public sale or auction of tax debts or liens but rather allows a person to authorize another to pay the taxes imposed on their real property, presumably executing a promissory note in return.  V.T.C.A., Tax Code § 32.06.

concern, it believes that it is one that would be more appropriately addressed to the New Jersey state legislature. The Court is bound in its determination by state law, and, under the current Tax Sale Law, Debtor does not have a "tax claim."

CONCLUSION

For the above reasons, and for good cause shown,

IT IS this 14th day of September, 2010

ORDERED that the Bankruptcy Court's Order is AFFIRMED.

/s/ *Anne E. Thompson*

_____
ANNE E. THOMPSON, U.S.D.J.